IN THE
# ARIZONA COURT OF APPEALS
DIVISION TWO

———————————————

STATE OF ARIZONA; MAJOR GENERAL MICHAEL T. MCGUIRE (RET.);
MAJOR GENERAL HOWARD P. PURCELL (RET.);
BRIGADIER GENERAL ANDREW MACDONALD (RET.); AND
BRIGADIER GENERAL JEFFREY L. BUTLER,
*Petitioners*,

*v.*

HON. KYLE BRYSON, JUDGE OF THE SUPERIOR COURT OF THE STATE OF
ARIZONA, IN AND FOR THE COUNTY OF PIMA,
*Respondent,*

*and*

GILBERT DELGADO,
*Real Party in Interest.*

No. 2 CA-SA 2023-0069
Filed December 15, 2023

———————————————

Special Action Proceeding
Pima County Cause No. C20205813

———————————————

**JURISDICTION ACCEPTED;**
**RELIEF GRANTED IN PART**

———————————————

COUNSEL

Kristin K. Mayes, Arizona Attorney General
By Christopher P. White, Assistant Attorney General, Tucson and
Rebecca A. Banes, Assistant Attorney General, Phoenix
*Counsel for Petitioners*

Lewis & Llewellyn LLP, San Francisco, California
By Paul T. Llewellyn and Kenneth M. Walczak

and

Gregory J. Krino, Santa Monica, California
*Counsel for Real Party in Interest*

---

**OPINION**

Chief Judge Vásquez authored the opinion of the Court, in which Presiding Judge Eppich and Judge Gard concurred.

---

V Á S Q U E Z, Chief Judge:

**¶1**        In this special-action proceeding, petitioners the State of Arizona and officers of the Arizona Air National Guard (AZANG) (collectively, "the state") challenge the respondent judge's denial of their motion for summary judgment on real-party-in-interest Gilbert Delgado's claim that the state failed to comply with a clearance order entered pursuant to A.R.S. § 13-4051. The state maintains the respondent erred by concluding that § 13-4051 applies to more than law enforcement agencies and the courts. Because we agree, we accept special-action jurisdiction and grant relief in part; however, the respondent must now determine whether AZANG is a law enforcement agency as contemplated by § 13-4051.

## Factual and Procedural Background

**¶2**        The relevant facts are undisputed. Delgado was a member of AZANG from July 2006 through April 2010. In October 2013, he was indicted under Pima County cause number CR20134290002 for multiple criminal counts stemming from alleged improper travel reimbursements. However, the trial court later dismissed the indictment with prejudice at the prosecutor's request.[1] In November 2014, upon "[s]tipulation of the

---

[1] In November 2022, Delgado paid approximately $90,000 for overpayment of travel entitlement, after the Air Force Remissions Board declined to dismiss his debt.

parties and the [c]ourt believing that justice will be served," the court entered the following order in CR20134290002:

> It is hereby ordered, pursuant to A.R.S. § 13-4051, that entry of a notation that Gilbert Delgado has been cleared in this matter shall be made on all court records, police records and any other records of any other agency relating to his arrest and indictment herein.
>
> The Clerk of the Court shall cause a copy of this Order to be delivered to all law enforcement agencies and Courts. All law enforcement agencies and Court[s] shall not release copies of or provide access to any records in this matter pertaining to Gilbert Delgado to any person except on Order of the Court.

¶3        The following month, Delgado informed AZANG of the order. To ensure AZANG's compliance with the order, Delgado submitted a Freedom of Information Act request, asking for any documents related to his 2013 indictment. He later received several documents, which he maintains were not "properly annotated."

¶4        In December 2020, citing § 13-4051, Delgado filed a complaint against the state, which included a request for nearly three million dollars in damages for failing to abide by the trial court's order in CR20134290002.[2] In November 2022, the state filed a motion for summary judgment on several grounds. As relevant here, the state asserted that § 13-4051 does not support a cause of action in this case because the statute "applies only to law enforcement agencies and to courts—not to the military or to the Arizona National Guard." The state maintained its position was supported by the rules of statutory construction, the statute as a whole, and legislative intent. In response, Delgado argued that the state's interpretation of the statute was "so narrow as to leave [him] with no remedy whatsoever." Relying on what he characterizes as the plain language of § 13-4051(A), Delgado reasoned that the state's interpretation would make § 13-4051's reference to "'records of any other agency' meaningless surplusage."

---

[2]AZANG, although initially named as a defendant in this matter, was dismissed as a non-jural entity.

¶5 In March 2023, the respondent judge denied the state's motion for summary judgment. The state filed a motion for reconsideration, arguing, in part, that the respondent had "failed to address the substantial—and purely legal—arguments regarding the proper interpretation of . . . § 13-4051." Specifically, the state pointed out that the ruling had failed to address "whether the statute even reaches non-law enforcement agencies like the Air National Guard."

¶6 In July 2023, the respondent judge affirmed his prior ruling. In addressing his interpretation of § 13-4051, the respondent quoted subsections (A) and (C) of the statute in whole. The respondent agreed with the state that the phrase "any other agency" in subsection (A) "should be read narrowly and specific to the context of the rest of the statute." However, the respondent pointed out that the state's reading "would apply only to courts and law enforcement agencies within Arizona, but this would render the phrase in question pointless." The respondent thus concluded "the phrase in question must include some other agencies besides courts and police," including, in this case, the state defendants. This petition for special action followed.

## Special-Action Jurisdiction

¶7 Special-action jurisdiction is appropriate when a party has no "equally plain, speedy, and adequate remedy by appeal." Ariz. R. P. Spec. Act. 1(a); *see also Sw. Gas Corp. v. Irwin*, 229 Ariz. 198, ¶ 5 (App. 2012). "Our decision to accept jurisdiction of a special action is highly discretionary." *League of Ariz. Cities & Towns v. Martin*, 219 Ariz. 556, ¶ 4 (2009). We normally disfavor accepting special-action jurisdiction to review the denial of a motion for summary judgment. *City of Scottsdale v. Mikitish*, 253 Ariz. 238, ¶ 4 (App. 2022). However, exceptions exist for pure issues of law, matters of statewide importance, and questions of first impression. *Jennings v. Agne*, 254 Ariz. 174, ¶ 4 (App. 2022); *Deal v. Deal*, 252 Ariz. 387, ¶ 10 (App. 2021).

¶8 This special action presents a pure question of law concerning the interpretation of § 13-4051. *See State ex rel. Pennartz v. Olcavage*, 200 Ariz. 582, ¶ 8 (App. 2001). The issue presented is also one of first impression and statewide importance. *See ChartOne, Inc. v. Bernini*, 207 Ariz. 162, ¶ 9 (App. 2004). Additionally, for the reasons discussed below, the respondent judge erred as a matter of law by denying the motion for summary judgment. *See Pima County v. McCarville*, 224 Ariz. 366, ¶ 6 (App. 2010). Finally, if we were to decline jurisdiction, the state would be subjected to the unnecessary expenditure of time and money associated with further proceedings.

*See ChartOne, Inc.*, 207 Ariz. 162, ¶ 10. For these reasons, we exercise our discretion and accept special-action jurisdiction.

**Discussion**

**¶9**    As below, the state contends that § 13-4051 "applies only to records of law-enforcement agencies and courts" and "does not apply to documents in AZANG's custody." Because this issue involves the interpretation and application of § 13-4051, our review is de novo. *See State v. Christian*, 205 Ariz. 64, ¶ 6 (2003); *Strojnik v. Gen. Ins. Co. of Am.*, 201 Ariz. 430, ¶ 11 (App. 2001).

**¶10**    Section 13-4051 provides:

> A.    Any person who is wrongfully arrested, indicted or otherwise charged for any crime may petition the superior court for entry on all court records, police records and any other records of any other agency relating to such arrest or indictment a notation that the person has been cleared.

> B.    After a hearing on the petition, if the judge believes that justice will be served by such entry, the judge shall issue the order requiring the entry that the person has been cleared on such records, with accompanying justification therefor, and shall cause a copy of such order to be delivered to all law enforcement agencies and courts. The order shall further require that all law enforcement agencies and courts shall not release copies of or provide access to such records to any person except on order of the court.

> C.    Any person who has notice of such order and fails to comply with the court order issued pursuant to this section shall be liable to the person for damages from such failure.

The statute is directed at remedying "the 'economic and personal harm result[ing] to an individual if even a baseless arrest becomes known to his employers, credit agencies, banks, or even his neighbors, notwithstanding the absence of a conviction.'" *State v. Mohajerin*, 226 Ariz. 103, ¶ 15 (App.

2010) (alteration in *Mohajerin*) (quoting *Beasley v. Glenn*, 110 Ariz. 438, 439 (1974)).

¶11          When interpreting a statute, we start with the statute's plain language, giving words their ordinary meaning. *Secure Ventures, LLC v. Gerlach*, 249 Ariz. 97, ¶ 5 (App. 2020). If the language is clear and unambiguous, we give it effect without resorting to our secondary rules of statutory construction. *Glazer v. State*, 244 Ariz. 612, ¶ 9 (2018). However, if the text is ambiguous, we determine the meaning "by reading the statute as a whole, giving meaningful operation to all of its provisions, and by considering factors such as the statute's context, subject matter, historical background, effects and consequences, and spirit and purpose." *State v. Gonzales*, 206 Ariz. 469, ¶ 12 (App. 2003) (quoting *Zamora v. Reinstein*, 185 Ariz. 272, 275 (1996)).

¶12          The parties disagree whether we must resort to the secondary rules of statutory construction. The state argues that "any other agency" in § 13-4051(A) means "any other law enforcement agency" and "does not encompass all agencies," like, as relevant here, AZANG. In reaching that conclusion, the state relies on the principle of *ejusdem generis*, the statute as a whole, and legislative intent. It points out that the respondent judge omitted subsection (B) from the § 13-4051 analysis in his ruling on its motion for reconsideration. And the state reasons, "That omission resulted in an erroneous interpretation of the statute's scope because subsection (B) most clearly defines and restricts its reach by requiring the ordering court to deliver a clearance order only 'to all law enforcement agencies and courts.'" By contrast, Delgado maintains that the text of the statute is "clear and unambiguous on its face" and that "any other agency" includes agencies like AZANG.

¶13          The parties focus on the meaning of "any other agency," but they seemingly overlook the import of the full phrase, "any other records of any other agency relating to such arrest or indictment." § 13-4051(A). The language, "relating to such arrest or indictment," whether modifying the "records" or the "agency," limits the statute's reach. On the one hand, as the state argues, given the nature of an arrest and indictment, the language can be interpreted as referring to only "law enforcement agencies," such as arresting and prosecuting agencies. On the other hand, as Delgado contends—and the respondent judge concluded—the statute can be interpreted as referring to a broader set of agencies that have any records related to an arrest or indictment. The language of § 13-4051(A) is susceptible to both interpretations and thus ambiguous.

¶14 Turning to our canons of statutory interpretation, the canon of *ejusdem generis* "provides that general words which follow the enumeration of particular classes of persons or things should be interpreted as applicable only to persons or things of the same general nature or class." *State v. Barnett*, 142 Ariz. 592, 596 (1984). For example, in the phrase, "'probation, parole, work furlough or any other release,'" our supreme court concluded that because "any other release" was "preceded by the words 'probation, parole, work furlough,'" it must "encompass a class of persons who have been previously convicted of a crime." *Id.* (quoting A.R.S. § 13-604.01(A)). In another case, the court had to determine the meaning of "other legal entity" as used in "any corporation, partnership, association, labor union or other legal entity, or any group of persons associated in fact although not a legal entity." *Est. of Braden ex rel. Gabaldon v. State*, 228 Ariz. 323, ¶ 11 (2011) (quoting A.R.S. § 46-455(Q)). Because "other legal entity" followed "specifically enumerated (and generally private) business entities," the court concluded that "the phrase is most reasonably interpreted as applying to such entities rather than to governmental bodies." *Id.* ¶ 13.

¶15 Here, "any other records of any other agency" follows "court records" and "police records." § 13-4051(A). Applying *ejusdem generis*, we agree with the state that "any other agency" is most reasonably interpreted as agencies similar in nature to courts and police, like law enforcement agencies generally. *See Law Enforcement*, Black's Law Dictionary (11th ed. 2019) ("The detection and punishment of violations of the law"; "[p]olice officers and other members of the executive branch charged with carrying out and enforcing the criminal law."); *see also Newman v. Maricopa County*, 167 Ariz. 501, 503 (App. 1991) (functions of law enforcement agencies include crime prevention and broader protective functions). The related doctrine of *noscitur a sociis*, which requires us to determine a word's meaning "from the context in which it is used" and not in isolation, compels the same conclusion. *City of Surprise v. Ariz. Corp. Comm'n*, 246 Ariz. 206, ¶ 13 (2019). We decline to expand the phrase "any other agency" in § 13-4051(A) to include agencies "so markedly different from those the legislature expressly included." *Id.* ¶ 14.

¶16 The statute as a whole supports this interpretation of § 13-4051(A). *See Mohajerin*, 226 Ariz. 103, ¶ 12 (reading provisions of § 13-4051 together to determine meaning). Subsection (B) of the statute requires the trial court to deliver copies of an order entered pursuant to subsection (A) to "law enforcement agencies and the courts." It further provides that the order must require "all law enforcement agencies and courts" to "not release copies of or provide access to such records to any

person except on order of the court." *Id.* Subsection (B) is thus focused on "law enforcement agencies and courts." It contains no provision for other agencies to receive the clearance order or to maintain confidentiality.[3] At oral argument, Delgado could not explain why the legislature would so limit subsection (B) if it had intended subsection (A) to broadly reach all agencies, as he maintains. Because the order under subsection (B) is the result of the petition under subsection (A), both subsections are reasonably interpreted as covering the same agencies. *See State v. Mangum*, 214 Ariz. 165, ¶ 15 (App. 2007) ("[S]ubsections of a single statute must be 'read together and harmonized to avoid rendering any word, clause or sentence superfluous.'" (quoting *State v. Story*, 206 Ariz. 47, ¶ 13 (App. 2003))).

**¶17**         The legislative history of § 13-4051 further bolsters this interpretation of the statute. When § 13-4051 was enacted in 1973, its stated purpose was "to prescribe authority for . . . the removal of the names of persons wrongfully arrested or indicted from *police and court records*." 1973 Ariz. Sess. Laws, ch. 126, § 1 (emphasis added). That general statement does not articulate any intention to reach the records of all governmental agencies. *Cf. City of Phoenix v. Donofrio*, 99 Ariz. 130, 133 (1965) (we will not "inflate, expand, stretch, or extend statute to matters not within expressed provisions"). Moreover, when the legislature made non-substantive amendments to the statute in 2012, the stated purpose was to limit "access to *certain records* when a person is wrongfully arrested, indicted or charged with a crime and subsequently cleared."[4] S. Fact Sheet for S.B. 1225, 50th Leg., 2nd Reg. Sess. (Ariz. 2012) (emphasis added). Similarly, this court has previously interpreted § 13-4051 as providing "limited relief." *Mohajerin*, 226 Ariz. 103, ¶ 15. We see no reason to interpret the statute as applying to agencies broadly, as Delgado would have us do, in light of the statute's limited reach. *See id.*

**¶18**         In sum, § 13-4051 allows trial courts to enter orders, under certain circumstances, requiring "law enforcement agencies and courts" to annotate their records to reflect that individuals who were wrongfully arrested, indicted, or charged were cleared. The respondent judge erred in

---

[3]We express no opinion on whether a court could direct an order entered pursuant to § 13-4051(B) to be served on more agencies than law enforcement and the courts. The trial court in this case did not do so—its order simply mirrored the language of § 13-4051(A).

[4]In the 2012 amendment, the legislature added "or provide access to" to the second sentence of subsection (B). 2012 Ariz. Sess. Laws, ch. 44, § 2.

concluding "any other agency" under § 13-4051(A) expanded the statute to "include agencies, not court or law enforcement, which were involved or related to the indictment." Notably, we disagree with the respondent that interpreting "any other agency" to mean "law enforcement agencies" would "render the phrase in question pointless." Law enforcement agencies include more than police and the courts.

¶19        Because we have concluded that § 13-4051 applies to law enforcement agencies and the courts, the question becomes whether the trial court's order in CR20134290002 required AZANG—or its officers—to enter a notation on its records that Delgado had been cleared.[5] In other words, is AZANG a law enforcement agency? Because of his resolution of the first issue, the respondent judge did not address this question. The parties also did not present meaningful argument as to this point on review. Accordingly, we direct the respondent to consider in the first instance whether AZANG is a law enforcement agency, such that it was subject to the clearance order in CR20134290002.

## Disposition

¶20        For the foregoing reasons, we accept special-action jurisdiction and grant relief in part. We vacate the respondent judge's denial of the state's motion for summary judgment, and the respondent must now consider whether AZANG is a law enforcement agency.

---

[5]Delgado suggests that "each individual defendant" will need to be classified to determine whether he or she is liable under § 13-4051(C). However, he appears to be conflating the subsections of the statute. An order under subsection (B) is directed to and restricts an agency, while liability under subsection (C) arises based on a violation of the order.